UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| OFFICEMAX INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-cv-00110-JAW |
| | ) | |
| COUNTY QWIK PRINT, INC., | ) | |
| d/b/a/ CQP OFFICE SOLUTIONS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS TO DISMISS AND TO AMEND COUNTERCLAIMS

In this fiercely litigated suit between an employer and its former employees, the employer seeks dismissal under Rule 12(b)(6) of the employees' counterclaims of breach of contract, fraud, and violation of Maine's Timely Payment of Wages Statute, 26 M.R.S. § 621-A. At the same time, the former employees move to amend their counterclaims. The Court concludes that the breach of contract and statutory counterclaims state claims on which relief may be granted and thus survive the motion to dismiss, but that the fraud counterclaim must be dismissed as failing to satisfy the heightened pleading requirements for fraud. The Court grants the employees' motion to amend their counterclaims.

## I. STATEMENT OF FACTS

### A. Procedural History

On March 18, 2010, OfficeMax Incorporated (OfficeMax) filed a complaint in this Court claiming that County Qwik Print, Incorporated (CQP), David Levesque, and Dana Rattray (collectively, "the Defendants") breached Confidential

Information and NonCompetition Agreements and violated Maine's Uniform Trade Secrets Act. *Compl.* (Docket # 1). OfficeMax sought injunctive relief and actual and exemplary damages against the Defendants. *Id.* at 14-15. In addition to denying the substance of OfficeMax's claims, the Defendants asserted counterclaims of Breach of Contract (Count I); Fraud (Count II); violation of Maine's Timely Payment of Wages Statute, 26 M.R.S. § 621-A (Count III); and violation of the Maine Trade Secrets Act, 10 M.R.S. § 1451 *et seq.* (Count IV). *Answer, Affirmative Defenses, Demand for Jury Trial, and Countercl. of Defs.* (Docket # 66) (*Defs.' Countercls.*).

On December 15, 2010, OfficeMax moved to dismiss the Defendants' Counterclaims Counts I through III. *Pl.'s/Counter-Def.'s Mot. to Dismiss Counts I–III of Def./Counter-Pls.' Countercls.* (Docket # 72) (*Mot. to Dismiss*). On May 16, 2011, the Defendants responded in opposition to OfficeMax's motion.[1] *Def./Countercl. Pls.' Opp'n to Pl./Countercl. Def.'s Mot. to Dismiss Counts I-III of Def./Countercl. Pls.' Countercls.* (Docket # 89) (*Opp'n to Mot. to Dismiss*). At the same time, they moved to amend their Counterclaims. *Def./Countercl. Pls.' Mot. for Leave to Amend Their Answer, Affirmative Defenses, Demand for Jury Trial, and Countercls.* (Docket # 90) (*Mot. to Amend*). OfficeMax replied in support of its motion to dismiss, *Pl./Countercl. Def.'s Reply to Defs./Countercl. Pls.' Opp'n to Mot to Dismiss Counts I–III of Defs./Countercl. Pls.' Countercls.* (Docket # 93) (*Reply to*

---

[1] The Plaintiffs' response was delayed by the need to resolve whether the Defendants' motion should proceed while the Plaintiffs pursued their interlocutory appeal of the Court's Order on Motion for Preliminary Injunction. *Order on Mot for Prelim. Inj. and Mots. to Dismiss* (Docket # 64); *Interlocutory Appeal* (Docket # 68); *Defs.' Mem. Regarding Divestiture of Jurisdiction in Dist. Ct. upon Filing of Notice of Appeal* (Docket # 82); *Order on Mot. Regarding Divestiture of Jurisdiction* (Docket # 88).

*Mot. to Dismiss*), and shortly thereafter, responded in opposition to the Defendants' Motion to amend their counterclaims, *Pl./Countercl. Def.'s Opp'n to Defs./Countercl. Pls.' Mot. for Leave to Amend Their Answer, Affirmative Defenses, Demand for Jury Trial, and Countercls.* (Docket # 96) (*Opp'n to Mot. to Amend*). On June 20, 2011, the Defendants replied in support of their motion to amend their counterclaims. *Def./Countercl. Pls.' Reply Mem. in Further Support of Their Mot. for Leave to Amend Their Answer, Affirmative Defenses, Demand for Jury Trial, and Countercls.* (Docket # 97) (*Reply to Mot. to Amend*).

## B.    The Defendant's Counterclaims

The Defendants' counterclaims focus on OfficeMax's calculation of Messrs. Levesque and Rattray's compensation under OfficeMax's compensation plan. Under the plan, they received a base salary supplemented by an amount that depended on their sales performance. The Defendants allege that under OfficeMax's compensation plan, which the Defendants regard as a binding contract, the non-salary compensation was based on the "gross profit percentages and/or dollars earned by OfficeMax on sales to customers." *Defs.' Countercls.* at 8. The profit was allegedly based upon "the difference between the price charged to the OfficeMax customer and the listed 'cost' of the product to OfficeMax." *Id.* In other words, the greater the profit made on a given product, the greater the Defendants' non-salary pay. According to the Defendants, OfficeMax breached the compensation plan when it "manipulated, misrepresented, and/or miscalculated their gross profit percentages and/or gross profit dollars" by increasing the listed cost above the product's true cost. *Id.* That is, by increasing the listed cost of certain products,

OfficeMax enriched itself by reducing the profits it reported under the compensation plan and thus making smaller non-salary payouts to the Defendants.

### C.     The Motion to Dismiss

#### 1.     OfficeMax's Motion

OfficeMax's motion seeks dismissal of Counterclaim Counts I, II and III under Rule 12(b)(6) for failure to state a claim on which relief could be granted.  The central feature of OfficeMax's motion is an attached Incentive Plan dated July 1, 2008, which OfficeMax says is the "compensation plan" referenced by the Defendants in their Counterclaims.  *Sales Incentive Compensation For Plan Relationship Sales Associate* (Docket # 73).  According to OfficeMax, language in the Incentive Plan is fatal to Counterclaim Counts I through III.   As to Count I, OfficeMax says that the Incentive Plan includes an explicit disclaimer that it is not a contract, and even if viewed as a contract, the Plan allows OfficeMax, at its sole discretion, to change the manner in which profit margin was calculated.  *Mot. to Dismiss* at 9.  Regarding Count II, OfficeMax says that "the Incentive Plan makes it explicitly clear that the OfficeMax 'sales ledger method' would be used in calculating margin dollars in relation to the compensation of sales representatives," and that there is no other language in the plan "that could possibly serve as the basis for Defendants' blanket assertion that OfficeMax represented that it would have used its 'true costs' in determining the profit margin in relation to its Incentive Plan."  *Id.* at 8.  Lastly, OfficeMax says that Count III should be dismissed because there was no violation of Maine's wage statute since the Defendants received what they were entitled under the Incentive Plan.  *Reply to Mot. to Dismiss* at 6.

Looking beyond the Incentive Plan, OfficeMax asserts that, as a matter of law, Count II should be dismissed because the Defendants did not satisfy the heightened pleading standard required of allegations of fraud. *Mot. to Dismiss* at 7. Likewise, OfficeMax says that as a matter of law Claim III should be dismissed because the Defendants alleged only violations of 26 M.R.S. § 621-A, which covers only current employees. *Id.* at 10. Apparently anticipating the Defendants' eventual amendment to their Count III to include claims under 26 M.R.S. § 626, OfficeMax also says that section 626 is inapplicable first, because the Defendants did not allege that they previously made a demand for back pay and, second, because section 626 applies only to wages, not bonuses. *Id.* at 10–11.

### 2.   The Defendants' Response

Regarding their Counterclaim Count I, the Defendants observe that OfficeMax's focus on the Incentive Plan "appears to have support based on this Court's order in the related matter of *OfficeMax Incorporated v. Sousa*, 2:09-cv-00631-JAW" where the Court concluded that the Plan was not a contract and could not support a breach of contract claim. *Opp'n to Mot. to Dismiss* at 2–3. According to the Defendants, it is premature to consider the import of the Incentive Plan since at this stage of the proceedings the Court must accept the truth of the Defendants' factual allegations. *Id.* at 3. Nonetheless, the Defendants say that even if the Court considers the Incentive Plan, "[d]iscovery will be necessary to determine [its] scope and applicability." Furthermore, they argue that the Plan at most speaks to Messrs. Levesque and Rattray's compensation after July 1, 2008, the date listed on the Plan. *Id.* at 3–4. It does not speak to their pre-July 1, 2008 compensation. *Id.*

Turning to Count II, the Defendants reject OfficeMax's argument that the language of the Incentive Plan is fatal to their allegations of fraud. *Id.* at 8-9. Repeating their arguments against dismissal of Count I, the Defendants say that the alleged fraud extended beyond the period of time covered by the Incentive Plan and, furthermore, that OfficeMax violated its own plan when it substituted the listed cost for the true cost of its products. *Id.* at 9–10. The Defendants also reject the notion that they failed to plead the allegations of fraud with the requisite specificity, saying that because the allegedly fraudulent "conduct occurred throughout Defendants' tenure with [OfficeMax's predecessor] and OfficeMax," there was no need to allege specific dates. *Id.* at 10.

Finally, regarding their Counterclaim Count III, the Defendants read the case law as limiting only section 621-A(1) and (2) to current employees, not section 621-A(5). *Id.* at 5–6. Moreover, they explain that their amended Count III alleges violations not only of section 621-A(1) and (5), but also section 626. *Id.* at 6. They say of their section 626 claim, that this Court previously rejected both of OfficeMax's arguments in *Sousa* and that the same reasoning applies here. *Id.* at 6–8.

### 3.     OfficeMax's Reply

In its reply, OfficeMax reasserts the same points as in its original motion and presses the argument that the compensation plan was the "sole basis" for the Defendants' counterclaims, and that, therefore, the Court is justified in considering the Incentive Plan. *Reply to Mot. to Dismiss* at 1, 3, 5. To the extent the Defendants rely on other documents, OfficeMax says that their counterclaims fail to

contain factual allegations that "plausibly give rise to an entitlement to relief." *Id.* at 2, 4, 6.

## D. Motion to Amend

### 1. The Defendants' Motion

The Defendants seek to add one and amend three paragraphs falling under Counterclaim Counts II and III. They acknowledge that the proposed amendments are sought, in part, "to allay concerns raised by OfficeMax in its motion to dismiss Counts I-III of the counterclaim." *Mot. to Amend* at 3. The Defendants explain that the proposed amendments do not "add new counts or new substantive relief . . . [but] merely supplement and clarify that which was already contained within Defendants' counterclaim," and that OfficeMax has not yet answered the original counterclaims. *Id.*

### 2. OfficeMax's Response

The gravamen of OfficeMax's opposition is that any amendments to the counterclaims would be futile and should be denied on that basis. Pointing to its Motion to Dismiss and related Reply, OfficeMax says that the proposed amendments to Count II do not diminish the clarity of the Incentive Plan, which remains controlling, and that the amended Count still lacks the requisite specificity for a fraud allegation. *Opp'n to Mot. to Amend* at 5-6. Similarly, as to Count III, OfficeMax again points to the language of the Incentive Plan and argues that the amended claim still would not state a claim upon which relief could be granted. *Id.* at 7–8.

### 3. The Defendants' Reply

In their Reply, the Defendants assert that their amendments would not be futile. As to Count II, they say that their allegations are broader than the Incentive Plan and that the amended counterclaim "contains sufficient particularity of fraud." *Reply to Mot. to Amend* at 2–3. As to Count III, they again say that their allegations extend beyond the Incentive Plan and that, in any event, "[i]f Counterclaim Plaintiffs have not been paid in accordance with any compensation plan, up to and including the Incentive Plan, then their proposed amendment to Count III is not futile." *Id.* at 3–4.

## II.    DISCUSSION

### A.    Rule 12(b)(6) Dismissal Standard

In ruling on a motion to dismiss, the Court "must assume the truth of all well-plead facts and give the plaintiff [or counterclaimant] the benefit of all reasonable inferences therefrom." *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir. 2010); *accord Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). To survive a motion to dismiss, the non-moving party must allege "sufficient facts to show that he has a plausible entitlement to relief." *Sanchez*, 590 F.3d at 41. (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted) (alterations in *Twombly*). The Court adopted a "two-pronged approach." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). As clarified by the First Circuit, a court should first identify and disregard statements in the complaint that merely offer "legal conclusions couched as fact" or "threadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1949-50, and *Twombly*, 550 U.S. at 555) (internal punctuation omitted). Second, a court should treat non-conclusory allegations in the complaint as true, "even if seemingly incredible." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951)). "If the factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949)). Legal conclusions are not entitled to the presumption of truth granted to factual allegations. *Id.* at *7. In conducting this two-pronged approach, a court should keep in mind that "evaluating the plausibility of a legal claim is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950)).

### B. Consideration of the Compensation Plan

Because OfficeMax's motion depends so greatly on the Court's reading of the Incentive Plan, the Court must first determine whether the Incentive Plan may be considered within the Rule 12(b)(6) framework. "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary

judgment." *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *accord Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment" (internal citation omitted)).  However, a narrow exception exists "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Rivera*, 575 F.3d at 15.  "Typically, a contract between the parties is the type of document the courts have considered when ruling on a motion to dismiss." *Knowlton v. Shaw*, 708 F. Supp. 2d 69, 75 (D. Me. 2010) (citing *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009)).  Here, the Defendants do not question the authenticity of the document submitted by OfficeMax, but they do question its "scope and applicability." *Opp'n to Mot. to Dismiss* at 3.  They posit that even if the Court determines that the Incentive Plan cannot ground the Defendants' Counterclaims, "there would have to have been some other contract between OfficeMax and Defendants that dictated . . . how Defendants would be compensated." *Id.*

The Defendants' Complaint discusses a "compensation plan" generally and it is unclear whether it refers to a single document or a series of documents.  The Court therefore cannot say whether the Incentive Plan constitutes the entirety of

the "compensation plan" referred to in the Counterclaims, or whether, for instance, there are other documents or statements by OfficeMax that amended or superseded the Incentive Plan. Furthermore, the Incentive Plan is dated July 1, 2008, and even if it determines Defendants' post-July 1, 2008 compensation, there is no allegation that it covers pre-July 1, 2008 compensation. Indeed, the Defendants urge the Court to read their reference to a compensation plan "broadly as allegations concerning the various methods by which their compensation was calculated through the years, beyond that which is merely contained in the Incentive Plan, but including the Incentive Plan." *Reply to Mot. to Amend* at 3-4.

In short, the Incentive Plan presents part, but not the whole picture. To this point, the Defendants assert the need for additional discovery to clarify the scope and applicability of the Incentive Plan, whether OfficeMax operated in accordance with the Incentive Plan, and whether there were other compensation agreements relevant to the Defendants' pre-July 1, 2008 compensation. The Court is wary of ruling prematurely when the allegations in the Complaint can reasonably be interpreted as raising factual questions about whether the Incentive Plan is dispositive. *See Knowlton*, 708 F. Supp. 2d 69, 75-76 (D. Me. 2010) (denying a motion to dismiss because "when the responding party challenges not the authenticity of a[] . . . contract, but its completeness, a court is not in a position in a motion to dismiss to evaluate whether what is missing would generate a genuine issue of material fact"). The more prudent course is to allow the parties to engage in discovery and revisit the legal issue based on a more fully developed record.

As both sides observe, this Court recently analyzed the same Incentive Plan in a lawsuit between OfficeMax and other former employees where the defendants similarly asserted breach of contract and fraud counterclaims. The Court concluded that the Incentive Plan was not a contract and granted summary judgment to OfficeMax on the breach of contract and fraud counterclaims. *OfficeMax Inc. v. Sousa*, No. 2:09–cv–00631–JAW, slip op. at 30-34 (D. Me. Mar. 24, 2011). Given the numerous parallels of that case to the case at bar, the evidentiary record here may turn out to resemble that case and, in due time, the result may be the same. Nevertheless, the cases are separate actions, with theoretically different facts and different defendants who are entitled to their own judicial determination.

The Court declines to consider the Incentive Plan as part of the Rule 12(b)(6) record.

### C.     Motion to Dismiss Counterclaim Count I

The Defendants' Counterclaim Count I alleges breach of contract.[2] According to OfficeMax, dismissal is appropriate because "the Incentive Plan, and the Acknowledgements signed by Defendants, include an *explicit* disclaimer that the Incentive Plan was not an employment contract" and in any event, even if the Court views the compensation plan as a contract, there was no breach. *Mot. to Dismiss* at 9 (emphasis in *Mot. to Dismiss*).

Having concluded that it will not consider the Incentive Plan in assessing OfficeMax's motion to dismiss, the Court is left with only the Defendants'

---

[2] The amendments the Defendants seek to their counterclaims do not touch Counterclaim Count I. *Reply to Mot. to Amend* at 1.

allegations. In spite of some reservations, assuming the truth of the factual allegations and drawing all reasonable inferences, the Court concludes that the Defendants' Counterclaim Count I properly states a claim on which relief may be granted. *See Twombly*, 550 U.S. at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder"); *Ocasio-Hernandez*, 640 F.3d at 12 ("Although evaluating the plausibility of a legal claim 'requires the reviewing court to draw on its judicial experience and common sense,' the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable'" (internal citations omitted)).

### D. Motion to Dismiss Counterclaim Count II

The Defendants' Counterclaim Count II alleges fraud and therefore under Rule 9(b) "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). The heightened pleading requirement serves "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." *Cutler v. Fed. Deposit Ins. Corp.*, 781 F. Supp. 816, 818 (D. Me. 1992) (quoting *New Eng. Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987)). The First Circuit "has consistently required strict compliance with Rule 9(b)." *Bailey v. Linsco/Private Ledger Corp.*, 136 F.R.D. 11, 15 (D. Me. 1991). A satisfactory complaint must specify "the time, place and content of an

alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *In re One Bancorp Sec. Litig.*, 135 F.R.D. 9, 12 (D. Me. 1991) (quoting *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984)).

Lacking here is any specificity as to time—a deficiency that the Defendants openly admit. Indeed, the only temporal reference in the original counterclaim to an alleged fraud is that "[a]t times that Levesque and Rattray worked for OfficeMax, OfficeMax manipulated, misrepresented, and/or miscalculated their gross profit percentages and/or gross profit dollars." *Defs.' Countercls.* at 4. The Defendants' proposed amendments do not add any specificity, making only oblique references to "many occasions throughout the employment of Levesque and Rattray" or "many occasions during their tenure." *Mot. to Amend* Attach. 1 (*Proposed Am. Answer*) at 9. The Defendants explain that "there is a simple reason for this omission, specifically that this conduct occurred throughout Defendants' tenure with [OfficeMax's predecessor] and OfficeMax." *Opp'n to Mot. to Dismiss* at 10. Thus, the Defendants alleged that the OfficeMax's fraud was bounded only by the Defendants' start and end dates. *Id.*

Such generality does not satisfy Rule 9(b). "[T]he First Circuit requires more of a complaint than a general statement of the general time frame during which alleged fraudulent representations were made." *Bailey*, 136 F.R.D. at 15 n.10. The Counterclaims allege numerous, discrete instances of fraud, referring to "many" instances in which the Defendants became aware that the listed cost was not the

true cost, but the Defendants fail to specify dates for each alleged discrete instances of fraud.  Rule 9(b) requires the dates of those instances to be alleged with particularity rather than a broad range of dates.  *See Learning Express, Inc. v. Ray-Matt Enters., Inc.*, 74 F. Supp. 2d 79, 85-86 (D. Mass. 1999) (concluding that the failure to mention "time or date other than the general statement that '[o]n or about January, 1996'" was fatal to the defendant' fraud counterclaim); *Bio-Vita, Ltd. v. Rausch*, 759 F. Supp. 33, 37 (D. Mass. 1991) (concluding that reference to fraudulent actions done "[i]n the course of the negotiations" did not satisfy the temporal pleading requirement); *Boyle v. Merrimack Bancorp, Inc.*, 756 F. Supp. 55, 61 n.11 (D. Mass. 1991) (noting that general allegations of fraud between 1984 and 1987 "do not meet the requirements of Rule 9(b)").  Furthermore, the Defendants' explanation that the alleged fraudulent activity was frequent and ongoing does not free them from the heightened pleading requirement. Rather such a claim of pervasive and ongoing fraud makes the protective rationale all the more essential since the alleged perpetrator's reputation might be damaged all the more severely by frivolous charges.  *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud . . . are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated").

This deficiency remains, whether the Court looks to the original or amended Counterclaim Count II, and, therefore, the Court dismisses Counterclaim Count II. However, the Defendants urge the Court to dismiss without prejudice.  *Opp'n to Mot. to Dismiss* at 11.  Because the Defendants may be able to correct their deficient

pleading, the Court dismisses the fraud claim without prejudice. *See Nawrocki v. Wilson*, Civil No. 10-cv-304-SM, 2010 U. S. Dist. LEXIS 102530, *15-16 (D.N.H. Sept. 28, 2010) (stating that "it might be appropriate to grant a motion to dismiss a pro se complaint without prejudice, and with leave to amend to cure identified deficiencies" unless the relief would "prove to be an exercise in futility"); *Darling's v. Nissan N. Am., Inc.*, 117 F. Supp. 2d 54, 61 (D. Me. 2000) (converting a Rule 12(b)(6) motion to a motion for summary judgment and dismissing the Plaintiff's claim without prejudice).

### E.    Motion to Dismiss Counterclaim Count III

OfficeMax makes four arguments in favor of dismissal of Counterclaim Count III.  First, OfficeMax notes that the original, un-amended Counterclaim Count III alleges violation of only 26 M.R.S. § 621-A(1) and (5), under which recovery "is limited to *current* employees seeking to obtain unpaid wages" and concludes accordingly that the "defendants therefore do not have a cognizable claim under § 621-A." *Mot. to Dismiss* at 10 (emphasis in *Mot. to Dismiss*).  Second, OfficeMax preemptively challenges any alleged violation of Section 626, which conditions liability on a demand for unpaid wages "at the office where payrolls are kept and wages are paid."  *Id.* (quoting 26 M.R.S. § 626).  According to OfficeMax, "Defendants have not alleged that they made a demand concerning alleged unpaid wages or other compensation to OfficeMax personnel at any time, much less a demand 'at the office where payrolls are kept and wages are paid' as required by Maine Revised Statue Annotated § 626."  *Id.*  Thus, "Defendants' unpaid wages claim fails for the simple reason that they failed to comply with a prerequisite for

bringing such a cause of action pursuant to Maine Law." *Id.* Third, OfficeMax argues that the Defendants seek recovery of what are effectively unpaid bonuses, and that the statute only covers unpaid wages. *Id.* at 11. Finally, OfficeMax asserts that the Count is premised "exclusively upon the terms of the 'OfficeMax compensation plan'" and says that the same Plan language justifying dismissal of Count I similarly justifies dismissal of Count III. *Reply to Mot. to Dismiss* at 6.

Turning to OfficeMax's first point—that Section 621-A is limited to current employees—the Court agrees with OfficeMax to a point. In *Goode v. Signet Electronic Systems, Inc.*, No. 06-65-P-S, 2006 WL 1636066, at *7 (D. Me. June 8, 2006)—cited for support by OfficeMax—the Court concluded that a dismissal of a Section 621-A claim was proper where there was "no sense in which the complaint may reasonably be construed to allege that the plaintiff is currently employed by the defendant." The Defendants' response, assuming the Court's acceptance of their amended Counterclaims Count III, explains that their amended Count III alleges violations not only of Section 621-A(1) and (5), but also Section 626. *Proposed Am. Answer* at 11. Furthermore, as regards their allegations under Sections 621-A(1) and (5), the Defendants argue that the case on which *Goode* relies, *In re Wage Payment Litigation*, 2000 Me 162, 759 A.2d 217, was applicable only to subsections 1 and 2, not to subsection 5, and that *Goode's* holding should be read accordingly.

As an initial matter, the Court understands the Defendants' response as admitting that liability under subsection 1 applies only to current employees since *Goode* spoke directly to this subsection. The question thus reduces to whether an

alleged violation of subsection 5 is similarly limited to current employees. The Court concludes it is.

In *In re Wage Payment Litigation*, the Maine Supreme Judicial Court explained that:

> the statute reveals a legislative intent to allow a private litigant recourse against an employer for an unpaid wage only if: (1) the employee has been discharged, subsequently demands to be paid, and the employer refuses to do so, *see* 26 M.R.S.A. § 626; or (2) when that employer has failed to pay a current employee in full, if the employer fails to pay the amount withheld by that employee's next regularly scheduled payday, *see* 26 M.R.S.A. §§ 621, 626-A.

2000 ME 162, ¶ 15, 759 A.2d at 223 (emphasis omitted). The Supreme Judicial Court made no distinction between subsections of Section 621, and this Court regards that as binding. Furthermore, Section 621-A is "a distinct statute with a distinct purpose" from Section 626, *Goode*, 2006 WL 1636066, at *7, and this distinction is reflected in the Supreme Judicial Court's determination that the two sections separately apply to current and discharged employees. The Law Court's clear distinction in *In re Wage Payment Litigation* would blur if some subsections of section 621-A applied to current and former employees.

The Defendants argue that the focus of subsection 5 distinguishes it from 1 and 2. That is, subsection 5 "does not deal with the prompt and regular payment of wages. Instead, this subsection deals with the notice that must be made to an employee before his/her rate of pay is changed." *Opp'n to Mot. to Dismiss* at 6. However, the Court does not view subsection 5 as detached from subsections 1 and 2. Subsections 1 and 2 deal with the timing, amount and regularity of wage payments; subsection 5 mandates prior notice before wages may be reduced. Thus,

subsections 1 and 2 dovetail with subsection 5 since, otherwise, an employer could retroactively reduce wages and claim it paid the full amount.

Furthermore, the titles of section 621-A in general and subsection 5 in particular suggest that the provisions cover current employees and the title of section 626 suggests that its provisions apply to terminated employees. Section 621-A is titled, "Timely and full payment of wages"; subsection 5 is titled, "Change in rate of pay"; and section 626 is titled "Cessation of employment." "Timely and full payment of wages" and "Change in rate of pay" suggest an ongoing employment relationship; "Cessation of employment" certainly does not. Furthermore, the inclusion of subsection 5 within section 621-A indicates its relationship to the "prompt and regular payment" of wages. *But see Carter v. United States*, 530 U.S. 255, 266-67 (2000) (stating that "the title of a statute is of use only when it sheds light on some ambiguous word or phrase in the statute itself." (internal quotation marks and brackets omitted)); *United States v. Chapman*, 60 F.3d 894, 898 (1st Cir. 1995) (noting that "the use of titles has its limits in statutory interpretation") *superseded by statute as recognized in United States v. Woodward*, 277 F.3d 87 (1st Cir. 2002).

This does not end the discussion. Although the statutes and case law are clear that section 621-A applies to current employees and section 626 to terminated employees, the intersection of these sections remains murky. The question remains whether terminated employees are strictly limited to relief under section 626 or whether a terminated employee may still initiate a cause of action under section

621-A for unpaid wages which he sought and was not paid when he was employed. More to the point, there is no suggestion that the Maine Legislature intended to omit a subclass of employees from the protections of its prompt wage payment provisions and the Court will resist interpreting these statutory sections so as to leave a gap in coverage.[3]  Here, the Court is concerned, given the constrained posture of the case, that the dismissal of one of the statutory causes of action will inadvertently expose a crack in the statutory scheme through which either Mr. Levesque or Mr. Rattray, or both, may fall.  Accordingly, the Court declines to dismiss one of these statutory causes of action and leaves for another day a more definitive legal ruling based on more definitive facts.  The Court therefore denies the motion to dismiss the claims under 26 M.R.S. § 621-A.

The Court turns to OfficeMax's second point—that the Defendants' section 626 claim should be dismissed.  OfficeMax argues that "Defendants have not alleged that they made a demand for unpaid wages or other compensation to OfficeMax personnel at any time, much less a demand 'at the office where payrolls are kept and wages are paid' as required by Maine Revised Statue Annotated § 626."  *Id.* Thus, according to OfficeMax, "Defendants' unpaid wages claim fails for the simple reason that they failed to comply with a prerequisite for bringing such a cause of action pursuant to Maine Law."  *Id.*

---

[3] Although at first blush the distinction between recovery under sections 621-A and 626 appears entirely academic, a closer inspection of the sections reveals real, substantive differences. Specifically, section 626 places additional burdens on a plaintiff, requiring that an alleged violation of section 626 be preceded by a demand for payment "at the office of the employer where payrolls are kept and wages are paid," while section 621-A contains no such prerequisite.  26 M.R.S. §§ 621-A, 626.

"A suit will be dismissed if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory.'" *United States ex rel. Hutcheson* v. *Blackstone Med., Inc.*, No. 10-1505, 2011 U.S. App. LEXIS 10972, at *17 (1st Cir. June 1, 2011) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)). However, "[n]o single allegation need 'lead to the conclusion' . . . of some necessary element, provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d at 13. Neither the original nor the amended Counterclaim Count III makes any allegation that Defendants demanded back pay. However, as this Court concluded in *Sousa*, "[a] lawsuit is a demand in its sharpest form," and the complaint's service upon the employer is plausibly sufficient to satisfy the statutory element that the demand be made "at the office where payrolls are kept and wages are paid." *Sousa*, 2011 U.S. Dist. LEXIS 31079, at *107. Whether the evidence will ultimately show that the Defendants satisfied other section 626 requirements, including having given OfficeMax a "reasonable time" to pay, are best left for summary judgment. *See id.* at *107 n.27.

Regarding OfficeMax's argument that the Defendants cannot seek recovery of what are effectively unpaid bonuses, the Court has already considered and rejected OfficeMax's argument that "Maine's wages statute provide[s] a cause of action only for unpaid 'wages.'" *Mot. to Dismiss* at 10. In the copending action, considering the same argument, this Court ruled:

> The Maine Supreme Judicial Court has emphasized that section 626 is intended to be read broadly in accordance with its protective purposes. . . . The statute provides that "[a]n employee leaving employment "must be paid *in full*" within a reasonable time after demand." 26 M.R.S. § 626 (emphasis supplied). Thus, . . . this Court holds that "incentives" . . . fall within the ambit of section 626.

*Sousa*, 2011 U.S. Dist. LEXIS 31079, at *111-12. The Court adopts the reasoning and conclusion in *Sousa* and reaffirms that Maine's wages statue applies with equal force to incentive and bonus-based compensation as it does to "wages." It rejects OfficeMax's assertion that dismissal of Counterclaim Count III is appropriate because "the term 'wages' only consists of an employee's base salary."

Finally, turning to the impact of the Incentive Plan on Counterclaim Count III, the Court has already concluded that it will not consider the Incentive Plan as part of the Rule 12 record. The Court thus rejects the argument that Count III must be dismissed based upon the language in the Plan

### F.     The Defendants' Motion to Amend

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Summers v. Earth Island Institute*, 555 U.S. 488 (2009) (Breyer, J., dissenting) (noting that the Federal Rules "provide a judge with liberal discretion to permit a plaintiff to amend a complaint"). Federal Rule 15, discussing amendments to pleadings before trial, provides that courts "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Nonetheless, "[r]easons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue

prejudice to the opposing party, and futility of amendment." *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009).

The Defendants highlight that the proposed amendments do not "add new counts or new substantive relief . . . [but] merely supplement and clarify that which was already contained within Defendants' counterclaim." *Mot. to Amend* at 3. They note that OfficeMax has not yet answered the original counterclaims and conclude that OfficeMax would suffer no prejudice as a result of the amendments. *Id.* OfficeMax objects to the proposed amendments on futility grounds, asserting that its amendments "do not fix the fatal, substantive flaws contained in Defendants' original claims for relief." *Opp'n to Mot. to Amend* at 2. In so doing, OfficeMax ties its objection to its motion to dismiss, asserting that "[a]n amendment to a pleading will be considered futile when the proposed amendment seeks to assert a cause of action that would not withstand a motion to dismiss or would otherwise fail to cure the deficiencies of the original cause of action." *Opp'n to Mot. to Amend* at 3.

"'Futility' means that the complaint, as amended, would fail to state a claim on which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). In assessing the asserted futility of a proposed amendment, "the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.*; *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). That is, the complaint as amended "must set forth facts sufficient to state a legal claim on which relief could be granted." *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010).

The proposed amendments relate to allegations in Counterclaim Counts II and III. The Court has already concluded that whether amended or not, Count II must be dismissed as lacking the specificity required for allegations of fraud. Amendment as to that Count is therefore futile. Conversely, Count III survives, whether amended or not. Because amended Count III states a claim on which relief could be granted, and because none of the other contraindications such as bad faith, dilatory motive or undue prejudice to OfficeMax is present, the Court grants the proposed amendments to Count III. Moreover, because the first paragraph of Counterclaim Count III "repeat[s] and reallege[s] the allegations contained in paragraphs 1 through 14 [pertaining to Counts I and II]," *Proposed Am. Answer* at 11, the Court allows the proposed amendments to those paragraphs falling under the Count II heading to the extent they are incorporated into Count III.[4]

## III.   CONCLUSION

The Court GRANTS in part and DENIES in part OfficeMax Incorporated's Motion to Dismiss Counts I – III of Defendant/Counter-Plaintiffs' Counterclaims (Docket # 72). The Court DISMISSES Counterclaim Count II without prejudice; it otherwise DENIES the Motion. The Court GRANTS County Qwik Print, Incorporated, David Levesque and Dana Rattray's Motion for Leave to Amend Their Answer, Affirmative Defenses, Demand for Jury Trial, and Counterclaims (Docket # 90) as regards Count III, and DENIES the Motion for Leave to Amend as to Count II except to the extent the allegations are integral to Counts III and IV.

---

[4] Counterclaim Count IV—although not the focus of either motion—likewise "repeat[s] and reallege[s] the allegations" made in Counts I through III, *Proposed Am. Answer* at 12, and proposed amendments to Counts II and III are therefore incorporated into Counterclaim Count IV.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 9th day of August, 2011